UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL DEEM,

                             Plaintiff,

          v.

LORNA DiMELLA-DEEM; LINDA EICHEN,
ESQ.; HON. HAL GREENWALD; and HON.
JOSEPH EGITTO,

                             Defendants.

No. 18-CV-11889 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Michael A. Deem
Yonkers, NY
*Pro Se Plaintiff*

Anthony P. Colavita, Esq.
Noah Nunberg, Esq.
L'Abbate, Balkan, Colavita and Contini, LLP
Garden City, NY
*Counsel for Defendant Linda Eichen*

KENNETH M. KARAS, District Judge:

          Plaintiff, Michael Deem ("Plaintiff"), an attorney proceeding pro se, brings this action

pursuant to 42 U.S.C. § 1983, and 22 U.S.C. §§ 2201 and 2202, against his estranged wife, Lorna

M. DiMella-Deem ("DiMella-Deem"), his wife's attorney, Linda Eichen, Esq. ("Eichen"), the

Westchester County Family Court Judge presiding over his child custody proceedings, the

Honorable Hal B. Greenwald ("Judge Greenwald"), in his individual capacity, and the

Supervising Judge of the New York Family Courts in the Ninth Judicial District, the Honorable

Joseph A. Egitto ("Judge Egitto"), in his official capacity, alleging violations of his First,

Second, Ninth, and Fourteenth Amendment rights.  (Compl. (Dkt. No. 1).)[1]  Before the Court are

Eichen and DiMella-Deem's Motions to Dismiss.  (Eichen Not. of Mot. (Dkt. No. 9); DiMella-

Deem Not. of Mot. (Dkt. No. 13).)[2]  For the follow reasons, Defendants' Motions are granted.

## I.  Background

### A.  Factual Background

#### 1.  Plaintiff's State Child-Custody Proceedings

The facts recounted below are taken from Plaintiff's Complaint and are assumed to be

true for purposes of resolving the Motions.

Plaintiff alleges that he and DiMella-Deem are parents to two adoptive children, a

thirteen-year-old daughter and a twelve-year-old son.  (Compl. ¶ 9.)  Plaintiff and DiMella-Deem

allegedly agreed to raise their children in the Catholic faith and Plaintiff was an active participant

in the children's practice of their religion, including attending mass and participating in

catechesis.  (*Id*. ¶ 10.)  Plaintiff alleges he enjoyed "an excellent relationship with his children"

---

[1]  Plaintiff is an attorney licensed to practice law in the state of New York.  He is
currently suspended from practicing law in this Court.  On June 17, 2016, the Court's Committee
on Grievances suspended him from practicing in this Court "for a period of six months and until
further order of this Court."  *In re: Michael Deem*, M-2-238 (S.D.N.Y. June 17, 2016).  Plaintiff
has not filed an application for reinstatement and the Committee has not reinstated him.  Plaintiff
makes no mention of his status as an attorney or his suspension in his Complaint.
     The Court is ordinarily obliged to construe pro se pleadings liberally, *Harris v. Mills*, 572
F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest,"
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)
(quotation marks omitted).  Because Plaintiff is an attorney, however, he is not entitled to the
special solicitude usually granted to pro se litigants.  *See Tracy v. Freshwater*, 623 F.3d 90, 102
(2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all.");
*Zappin v. Doyle*, No. 17-CV-8837, 2018 WL 2376502, at *6 (S.D.N.Y. Apr. 10, 2018) (declining
to treat attorney proceeding pro se with special solicitude because he was an experienced
litigator, had access to the court's electronic filing system, and had previously represented
himself in multiple cases).

[2]  Judge Greenwald and Judge Egitto have not been served and have not appeared in this
Action.

until DiMella-Deem and her "co-conspirators" interfered with his "parental relations by fabricating allegations." (*Id*. ¶ 11.)

Plaintiff alleges that on May 17, 2016, he placed various handguns in the care of Blueline Tactical Supply & Shooting Sports, in Elmsford, New York, and that DiMella-Deem willingly gave him $500 cash to cover the storage fee. (Compl. ¶ 12.)

On November 7, 2017, Plaintiff filed an action for divorce in Westchester County Supreme Court seeking resolution of custody and equitable distribution of the marital assets. (*Id*. ¶ 13.) On December 6, 2017, DiMella-Deem filed an answer seeking sole custody of the children, which created a custody dispute between her and Plaintiff. (*Id*. ¶ 14.) Plaintiff alleges that in February 2018, DiMella-Deem offered to settle the divorce by giving Plaintiff $10,000 and having him move out of the marital home. Plaintiff rejected the offer. (*Id*. ¶ 15.) DiMella-Deem then allegedly yelled in a loud and hostile tone, "You better back off Michael! You better back off! You don't think I'll throw my money at this! Huh?! You don't think I'll throw my money at this! You're going to be sorry! You're going to have nothing! No money. No home. No family. Nothing! You better back off!" (*Id*.)

"In March and April 2018, Plaintiff and DiMella-Deem filed petitions against each other in Westchester Family Court pursuant to the New York State Family Court Act, Article 8." (*Id*. ¶ 16.) Plaintiff alleges that on April 19, 2018, DiMella-Deem filed fabricated allegations with Westchester County Child Protective Services ("CPS"), resulting in a no contact temporary order of protection ("TOP") that precluded Plaintiff from, inter alia, having any contact with his children and being escorted from the marital home by local law enforcement. (*Id*. ¶ 17.) The TOP also required Plaintiff to surrender all firearms to local law enforcement and prohibited him from obtaining any others. (*Id*.) Plaintiff alleges that the Family Court then entered the TOP

into the statewide registry of orders of protection and notified local authorities of the same. Local police authorities then entered Plaintiff's name into the National Instant Criminal Background Check System ("NICS") that same day. (*Id.* ¶ 20.)

Plaintiff alleges that he surrendered various long guns to local law enforcement and explained that his handguns were stored at Blueline. Plaintiff informed a police officer that in order to comply with the letter of the TOP both he and Blueline would have to violate criminal provisions of federal and state laws governing firearms because his name had been entered into NICS and his pistol license had expired. (Compl. ¶ 21.) The police officer allegedly declined to retrieve the handguns himself, agreed that Blueline and Plaintiff would have to violate federal and state laws governing firearms to comply with the TOP, and directed Plaintiff not to try to obtain the handguns while the TOP was in effect. Plaintiff alleges that he complied with this instruction. (*Id.* ¶ 22.)

Plaintiff alleges that on April 25, 2018, DiMella-Deem filed a petition under New York law containing additional fabricated allegations against Plaintiff. (*Id.* ¶ 23.) Plaintiff alleges that he informed the Family Court judge through counsel that he had unequivocal evidence that DiMella-Deem's allegations were fabricated, but that his statements and the evidence were ignored. A new "no contact" TOP was issued, which allowed for only six hours of supervised visits with his children. (*Id.*) Plaintiff alleges that he asked his attorney if he would be afforded a hearing to present his evidence and re-establish contact with his children, and that his attorney "blurted out" in response that "[i]t doesn't work like that here." (*Id.* ¶ 31.)

On May 10, 2018, DiMella-Deem filed a violation petition in Family Court falsely alleging that Plaintiff stopped DiMella-Deem's mail at the marital residence and that he "engaged in conduct protected by the First Amendment." (*Id.* ¶ 24.) Plaintiff alleges that he

only stopped by the house to get his own mail and that he "provided proof that day." (*Id.*) Nonetheless, the "no contact" TOP was extended, and again allowed for only six hours of supervised visits with his children. (*Id.*)

Plaintiff alleges that on May 15, 2018, DiMella-Deem conceded, and the Family Court acknowledged, that Plaintiff was not a threat to the children. Despite that concession, the Family Court appointed an attorney for the children ("AFC"), Faith Miller, Esq. ("Miller"). At the time Plaintiff was not informed who the AFC would be. (Compl. ¶ 25.) Plaintiff alleges that at this point he again asked his attorney if he would be afforded a hearing to present his evidence and re-establish contact with his children, and that his attorney again "blurted out" in response that "[i]t doesn't work like that here." (*Id.* ¶ 32.)

On June 12, 2018, CPS received an "unfounded an[d] anonymous complaint" of alleged child neglect against Plaintiff. Plaintiff alleges that the complaint "could have only originated" with DiMella-Deem. (*Id.* ¶ 26.) On June 13, 2018, the AFC filed an emergency order to show cause seeking to suspend all contact between Plaintiff and his children, allegedly "in retaliation for Plaintiff filing a violation petition against [DiMella-]Deem in Family Court." (*Id.* ¶ 27.) The Family Court signed the order a few hours later, ex parte, and the "no contact" TOP was extended to September 28, 2018, sua sponte. (*Id.*)

Plaintiff alleges that he subsequently learned that the AFC was prohibited from accepting "private pay" assignments pursuant to court rules regarding conflicts of interest, because she is married to the Presiding Judge of the New York State Supreme Court, Second Department. (*Id.* ¶ 28.) On August 17, 2018, DiMella-Deem's second attorney was relieved as counsel. (*Id.* ¶ 29.)

On September 24, 2018, Eichen filed a notice of appearance in Family Court on behalf of DiMella-Deem. (Compl. ¶ 33.) On September 26, 2018, Eichen filed an ex parte application to modify the TOP entered on April 19, 2018 to include surrender of Plaintiff's handguns to Blueline. The application was granted. A new TOP was issued continuing the suspension of all contact between Plaintiff and his children and ordering him to surrender all firearms to local law enforcement or Blueline. (*Id*. ¶ 34.) Plaintiff alleges that Eichen and DiMella-Deem made affirmative misrepresentations that Plaintiff had access to his handguns at Blueline in support of their application, and that Judge Greenwald knew they were affirmative misrepresentations. (*Id*. ¶ 48.)

On September 28, 2018, a conference was held by Judge Greenwald. Plaintiff stated that he was in compliance with the TOP filed on April 19, 2018, but Judge Greenwald allegedly refused to hear the matter until he appointed new AFCs for the children. The matter was adjourned to November 9, 2018, and the "no contact" TOP extended to the same day. (*Id*. ¶ 35.)

On September 28, 2018, the Family Court granted AFC Miller's application to be relieved. (*Id*. ¶ 30.) Between September 28 and November 9, 2018, Judge Greenwald appointed an AFC for each of Plaintiff's children. Plaintiff was allegedly not informed of the appointments. (*Id*. ¶ 36.)

On September 29, 2018, Plaintiff wrote a letter to Judge Egitto seeking, inter alia, assistance in being afforded a hearing pursuant to the New York State Family Court Act ("FCA"), § 842-a(7), which provides for hearings related to any firearm revocation, suspension, ineligibility, or surrender order. (*Id*. ¶ 37.) On October 2, 2018, Judge Egitto responded to Plaintiff and pointed out that a hearing was already scheduled for November 9, 2018 and a trial on the underlying petitions for January 8 and 9, 2019. (*Id*. ¶ 38.)

On November 9, 2018, Plaintiff learned that Judge Greenwald appointed AFCs for each of his children when they appeared in Family Court. Plaintiff objected to the appointment of the AFCs and requested to know the authority by which Judge Greenwald had appointed them. (Compl. ¶ 39.) Plaintiff alleges that one of the newly-appointed AFCs is precluded from accepting "private pay'' assignments pursuant to court rules regarding conflicts of interest, because he is married to an employee of the Westchester County Family Court. (*Id*. ¶ 40.)

Plaintiff alleges that on November 10, 2018, he was "willfully and maliciously deceived and believing that no TOP was in place," and thus attempted to re-establish contact with his children by sending texts, calling their cell phones, and leaving a voicemail for his son. (*Id*. ¶ 49.) That same day, Plaintiff went to the local police department near the marital home and requested an escort to the house because he believed DiMella-Deem would fabricate new allegations. The police informed Plaintiff that DiMella-Deem had just filed a complaint that Plaintiff violated a TOP, and showed Plaintiff a "no contact" TOP that was signed by Judge Greenwald on November 9, 2018. (*Id*. ¶ 50.)

Plaintiff alleges that the TOP incorrectly stated that the Plaintiff was advised in court of the issuance and contents of the TOP, and that the order was personally served upon Plaintiff in court. (*Id*. ¶ 51.) Plaintiff was subsequently arrested and arraigned that day for violating the TOP which he alleges was "secreted from him the day prior." (*Id*. ¶ 52.)

Plaintiff subsequently contacted Judge Greenwald's chambers and asked that a corrected TOP be issued to reflect that Plaintiff was not advised of the existing TOP in Court and was not personally served with it. Judge Greenwald denied the request. Plaintiff alleges that Judge Greenwald never stated that Plaintiff was wrong in his assessment of the accuracy of the TOP. (*Id*. ¶ 53.)

Every TOP issued by the Family Court from April 19, 2018 through the present time has required Plaintiff to, inter alia, surrender his firearms. (Compl. ¶54.) Plaintiff alleges that the Westchester Family Court never made a finding that Plaintiff presented a physical danger to the children or anyone else, or any other basis to order Plaintiff to surrender his firearms or enter a "no contact" TOP. (*Id.* ¶55.)

Plaintiff alleges that on multiple occasions while entering the Westchester County Courthouse, he observed a man holding a large sign stating that he has been denied all contact with his children for six years by the Westchester County Family Court, but has never been afforded a hearing. (*Id.* ¶56.) Plaintiff alleges that the "Westchester County Family Court has an unconstitutional custom and practice of issuing TOPs without proper cause and rarely, if ever, providing the party against whom the TOP is entered a hearing pursuant to FCA, § 842-a(7)." (*Id.* ¶57.) Plaintiff alleges that as a result of Defendants' "constitutional misconduct Plaintiff is the targeted parent of parental alienation." (*Id.* ¶ 58.)

### 2. Plaintiff's Claims

Plaintiff's first claim is against DiMella-Deem and Eichen under § 1983 for violating his First Amendment religious freedom rights by allegedly denying him the right to practice his religion by participation in family mass and catechesis with his children. (*Id.* ¶¶ 60–62.)

Plaintiff's second claim is against DiMella-Deem and Eichen under § 1983 for violating his First, Ninth, and Fourteenth Amendment rights by allegedly denying him his "right to parental relations." (*Id.* ¶¶ 63–65.)

Plaintiff's third claim is against DiMella-Deem and Eichen under § 1983 for violating his Fourteenth Amendment due process rights by allegedly conspiring "with Judge Greenwald to

enter a restraining order against Plaintiff in secrecy and without cause to deny Plaintiff his right to a hearing pursuant to FCA § 842-a(7)." (*Id.* ¶¶ 66–69.)

Plaintiff's fourth claim is against DiMella-Deem and Eichen under § 1983 for violating his Second Amendment right to keep and bear arms by allegedly agreeing with Judge Greenwald to enter a restraining order against Plaintiff. (Compl. ¶¶ 70–72.)

Plaintiff's fifth claim is against Judge Greenwald under § 1983 for violating his First, Second, Ninth, and Fourteenth Amendment rights "by his prolonged and repeated refusal to perform his constitutional and statutory duties, specifically to hold a post-deprivation hearing pursuant to FCA § 842-a(7)." (*Id.* ¶¶ 73–75.)

Plaintiff's sixth claim is against Judge Egitto, "in his official capacity as the Supervising Judge of the Family Courts, in the 9th Judicial District, State of New York," under § 1983 and 22 U.S.C. §§ 2201 and 2202, for failing or refusing to "correct a custom and practice in the Westchester County Family Court of denying litigants their constitutional right[s] to" freedom of religion, parental relations, due process, keep and bear arms, and a hearing pursuant to FCA, § 842-a(7). (*Id.* ¶¶ 77–82.) Plaintiff alleges Judge Egitto also failed or refused to correct a custom and practice of appointing AFCs without jurisdiction, (*id.* ¶ 83), and a custom and practice of "failing to inform parents when AFCs are appointed, the legal authority for the appointment, the factual basis for the appointment, the identity of the AFC and if the AFC is precluded from accepting any appointments," (*id.* ¶ 84).[3]

---

[3] 22 U.S.C. § 2201 authorizes the U.S. President to expend funds towards "[a]ssistance to disadvantaged children in Asia." Plaintiff makes no allegations regarding the President's provision of assistance to children in Asia in his Complaint, and it is not clear that Plaintiff has a private cause of action under this provision in any event. 22 U.S.C. § 2202 does not exist. The Court therefore treats Plaintiff's claims against Judge Egitto as § 1983 claims only.

Plaintiff seeks various forms of declaratory relief and damages, (*id*. ¶¶ A–M, S), but also injunctive relief in the form of "an order compelling the Westchester County Family Court to hold post-deprivation hearings within three days of entering 'no contact' TOPs," (*id*. ¶ N), and "an order compelling the Westchester County Family Court to hold post-deprivation hearings within fourteen days of ordering litigants to surrender their firearms," (*id*. ¶ O).

B.  Plaintiff's Previous Litigation

This is Plaintiff's third action seeking relief from the District Court for the Southern District of New York related to Plaintiff's state court divorce proceedings.  *See Deem v. DiMella-Deem*, No. 18-CV-6186; *Deem v. Scheinkman*, No. 18-CV-10777.  In both actions, Plaintiff filed suit against DiMella-Deem and other parties involved in the state divorce and child-custody proceedings including attorneys and judges.  Plaintiff's complaints were both dismissed *sua sponte*, first by Judge Román and subsequently by Judge Seibel.  Plaintiff's first complaint was dismissed by Judge Román on July 24, 2018 on the grounds of judicial immunity, the *Younger* abstention doctrine, and the domestic relations exception.  *See Deem v. DiMella-Deem*, No. 18-CV-6186 (Order of Dismissal (Dkt. No. 18).)  Judge Seibel dismissed Plaintiff's second action on December 18, 2018, finding that he was not entitled to federal *mandamus* relief and that his claims were barred by the *Younger* abstention doctrine.  *See Deem v. Scheinkman*, No 18-CV-10777 (Order of Dismissal (Dkt. No. 7).)  Judge Seibel also issued Plaintiff a warning, stating that "further duplicative or frivolous litigation in this Court may result in an order requiring Plaintiff to obtain written permission before filing new actions in this Court challenging the actions of his wife, judges, and other officials involved in the divorce and custody proceedings pending in Westchester County."  *Id.* at 7.

C.  Procedural Background

Plaintiff filed his Complaint on December 18, 2018.  (Compl. (Dkt. No. 1).)  On January

10, 2019, counsel for Eichen submitted a pre-motion letter requesting permission to file a Motion

to Dismiss.  (Letter from Anthony P. Colavita, Esq., to Court (Dkt. No. 5).)

On January 22, 2019, DiMella-Deem, proceeding pro se, submitted a letter requesting

that the Court dismiss Plaintiff's Complaint.  (Letter from Lorna M. Deem to Court (Dkt. No.

6).)  DiMella-Deem stated that this Action represents the third federal complaint Plaintiff has

filed against her, that Plaintiff has "terrorized" her and her children, that there is currently a

temporary order of protection in effect against Plaintiff on behalf of DiMella-Deem and her

children, and that Plaintiff is having increasingly severe mental health issues.  (*Id.*)

On January 22, 2019, the Court set a briefing schedule for Eichen's Motion To Dismiss.

(Dkt. No. 7.)  On January 23, 2019, the Court instructed DiMella-Deem that she could join

Eichen's Motion if she chose to do so.  (Dkt. No. 8.)  On February 22, 2019, Eichen filed her

Motion To Dismiss and accompanying papers.  (Eichen Not. of Mot.; Decl. of Noah Nunberg,

Esq. (Dkt. No. 10); Eichen's Mem. of Law in Supp. of Mot. To Dismiss ("Eichen's Mem.")

(Dkt. No. 11); Aff. of Service of Not. of Mot. on Plaintiff (Dkt. No. 12).)  DiMella-Deem joined

Eichen's Motion that same day.  (DiMella-Deem Not. of Mot.)

On March 20, 2019, after the window during which Plaintiff could amend his Complaint

as a matter of course had closed, Plaintiff submitted a letter requesting leave to file an amended

complaint in lieu of responding to Defendants' Motions, in order to add a false arrest claim based

on the November 10, 2018 arrest that he referenced in his Complaint, and in order to add facts

about "various decisions [that] have been made in state court" since he filed his original

Complaint.  (Letter from Michael Deem, Esq., to Court ("Pl.'s Nov. 2018 Letter") (Dkt. No. 15).)

On March 21, 2019, counsel for Eichen submitted a letter opposing Plaintiff's request. (Letter from Anthony P. Colavita, Esq., to Court (Dkt. No. 17).)  Plaintiff did not separately request an extension to file his response to the Motions to Dismiss which was due on March 22, 2019 and he has not filed his response to the Motions to Dismiss.

On April 22, 2019, just as this Opinion was in the final stages of drafting, Plaintiff filed another letter seeking leave to amend his Complaint and attached a Proposed Amended Complaint.  (Letter from Michael Deem, Esq., to Court ("Pl.'s Apr. 2019 Letter") (Dkt. No. 18).)  The Proposed Amended Complaint adds defendants, most of whom are involved in Plaintiff's Family Court proceedings and are state court judges, and describes recent developments in the Family Court proceedings.

## II.  Discussion

### A.  Standard of Review

#### 1.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

## 2. Sua Sponte Dismissal

The Court has the authority to dismiss sua sponte a complaint, or a portion thereof, for which a plaintiff has paid the filing fee where the plaintiff presents no arguably meritorious

issue.  *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000) (holding that a district court may dismiss a frivolous complaint sua sponte even when the plaintiff has paid the required filing fee); *Pillay v. Immigration & Naturalization Serv.*, 45 F.3d 14, 17 (2d Cir. 1995) (holding that the court has "inherent authority" to dismiss a petition that presents "no arguably meritorious issue").

    B.  Analysis

        1.  Claims Against DiMella-Deem and Eichen

Plaintiff brings all his claims against DiMella-Deem and Eichen pursuant to § 1983. Moving Defendants argue that all claims against them fail because they are not state actors and cannot be sued pursuant to § 1983.  (Eichen's Mem. 5–9.)

"Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."  *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012).  Thus, to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quotation marks omitted).  Thus, to state a viable § 1983 claim against DiMella-Deem and Eichen, Plaintiff must allege that they were state actors.

With respect to Eichen, Plaintiff alleges that she represented DiMella-Deem in Family Court and filed false ex parte applications on DiMella-Deem's behalf.  (Compl. ¶¶ 33–34, 48.) Plaintiff does not allege that Eichen acted in any capacity other than DiMella-Deem's privately-retained attorney.  "[I]t is well-established that . . . attorneys performing a lawyer's traditional functions as counsel . . . do not act 'under color of state law' and therefore are not subject to suit

under 42 U.S.C. § 1983." *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997); *see also Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir. 2010) ("It is well established that private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." (citation omitted)); *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (holding that "public defenders[,] . . . court-appointed counsel[,] and private attorneys do not act under the color of state law merely by virtue of their position"); *Shorter v. Rice*, No. 12-CV-0111, 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) (holding that neither "public defenders . . . nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position").

With respect to DiMella-Deem, Plaintiff fails to offer any factual assertions from which it could be inferred that DiMella-Deem was a state actor or that there was any nexus between DiMella-Deem and the state. *See Daniels v. Murphy*, No. 06-CV-5841, 2007 WL 1965303, at *2 (E.D.N.Y. July 2, 2007) (dismissing § 1983 claim against husband where wife failed to allege he had any nexus to the state during their divorce proceedings); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (dismissing § 1983 claims where defendants, including plaintiff's ex-wife, "acted purely as private individuals in connection with the state court [divorce and child custody] proceedings").

Plaintiff does appear to allege a conspiracy to violate his civil rights. For example, Plaintiff alleges that DiMella-Deem and her "co-conspirators" interfered with his "parental relations by fabricating allegations." (Compl. ¶ 11.) Plaintiff also alleges that Eichen and DiMella-Deem made affirmative misrepresentations that Plaintiff had access to his handguns at Blueline in support of their September 26, 2018 ex parte application to modify the TRO, and that Judge Greenwald knew they were affirmative misrepresentations. (*Id.* ¶¶ 34, 48.) Furthermore,

DiMella-Deem, Eichen, and Greenwald allegedly agreed to enter a restraining order against Plaintiff to deny him his right to keep and bear arms. (*Id*. ¶¶ 70–72.) However, allegations of a conspiracy to violate civil rights must be pleaded with specificity, and "[a]n otherwise invalid [§] 1983 claim cannot survive a motion to dismiss merely by mentioning the word 'conspiracy.'" *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004); *see also Anilao v. Spota*, 774 F. Supp. 2d 457, 499 (E.D.N.Y. 2011) ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed."). Rather, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). With this heightened standard in mind, the Court finds Plaintiff's conclusory allegations insufficient to support a conspiracy claim under § 1983. Plaintiff does not allege any specific facts indicating an agreement to act in concert to harm him. *See Baines v. City of N.Y.*, No. 10-CV-9545, 2015 WL 3555758, at *12 (S.D.N.Y. June 8, 2015) ("Although [the] [p]laintiff repeatedly asserts that [the d]efendants entered an agreement to violate his civil rights . . . , the [complaint] is devoid of facts that would render that allegation plausible as opposed to merely conceivable." (citation omitted)); *Harrison*, 95 F. Supp. 3d at 325 ("Critically absent from the [c]omplaint are any specific facts identifying a willful collaboration between [the defendants] to deny [the] [p]laintiff's constitutional rights, or an overt act or the agreement between the private actors and state actor forming the conspiracy." (citation and quotation marks omitted)). In particular, Plaintiff fails to plausibly allege a conspiracy between DiMella-Deem, Eichen, and Judge Greenwald. *See Parent v. New York*, 786 F. Supp. 2d 516, 540 (N.D.N.Y. 2011) (holding that wife's private divorce attorney was not liable for allegedly conspiring to violate plaintiff

husband's constitutional rights, because allegations that attorney engaged in ex parte conversation with judges, and unlawfully engaged a bar disciplinary committee in domestic relations process, were insufficient to establish liability under § 1983 because plaintiff "set forth no facts suggesting concerted action" between the wife, the attorney, and the judges); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 531 (E.D.N.Y. 2010) (dismissing § 1983 claims against attorneys who represented mother in state custody proceedings because plaintiff father's conclusory allegations that attorneys conspired with family court to deprive him of constitutional rights were insufficient to state a conspiracy claim).

Because Plaintiff fails to plausibly allege that DiMella-Deem and Eichen were state actors, or that they conspired with state actors, Plaintiff cannot state a claim for civil rights violations against DiMella-Deem and Eichen. Therefore, Plaintiff's claims against DiMella-Deem and Eichen are dismissed.

### 2. Claims Against Judge Greenwald and Judge Egitto

#### a. Judge Greenwald

Judges are absolutely immune from suit for damages with respect to claims under 42 U.S.C. § 1983 for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (holding that judge was immune from § 1983 suit for actions in directing police officers to bring an attorney before the judge, even though judge allegedly directed officers to carry out order with excessive force); *Turner v. Boyle*, 116 F. Supp. 3d 58, 82 (D. Conn. 2015) ("[A]bsolute immunity extends to all civil suits, including suits brought under Section 1983 and [S]ection 1985."). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial

immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation . . . ." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12; *see also Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005) ("[I]f the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction."). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). The Second Circuit and district courts therein have specifically applied such immunity to Family Court judges. *See Wrobleski v. Bellevue Hosp.*, No. 13-CV-8736, 2015 WL 585817, at *3 (S.D.N.Y. Jan. 30, 2015) (dismissing § 1983 claims against state family court judges on ground of absolute judicial immunity); *Koger v. New York*, No. 13-CV-7969, 2014 WL 3767008, at *6 (S.D.N.Y. July 31, 2014) (same), *appeal dismissed*, No. 15-092 (2d Cir. June 23, 2015); *see also Parent v. New York*, 485 F. App'x 500, 504 (2d Cir. 2012) (same).

Plaintiff alleges that Judge Greenwald violated his First, Second, Ninth, and Fourteenth Amendment rights "by his prolonged and repeated refusal to . . . hold a post-deprivation hearing

pursuant to FCA § 842-a(7)." (Compl. ¶¶ 73–75.)[4] Plaintiff alleges that at the September 28,

2018 conference, Judge Greenwald refused to hear Plaintiff's explanation for why he was in

compliance with the April 19, 2018 TOP, and instead adjourned the matter to November 9, 2018

and extended the "no contact" TOP. (*Id.* ¶ 35.) Plaintiff also alleges that between September 28

and November 9, 2018, Judge Greenwald appointed an AFC for each of Plaintiff's children but

failed to inform the Plaintiff of those appointments, (*id.* ¶ 36), and that Plaintiff objected to the

appointment of the AFCs and requested to know the authority by which Judge Greenwald was

appointing them, (*id.* ¶ 39). Finally, Plaintiff alleges that Judge Greenwald declined to modify

the November 9, 2018 TOP to reflect that Plaintiff was not advised of the existing TOP in Court

and was not personally served. (*Id.* ¶¶ 51, 53.)

Each of the actions Plaintiff alleges Judge Greenwald took falls within the scope of

judicial responsibility and represents a judicial function. Plaintiff alleges that Judge Greenwald

did not have the authority to appoint AFCs for his children, but the Family Court Act expressly

authorizes Family Court judges to "appoint a law guardian to represent the child, when, in the

---

[4] Inasmuch as Plaintiff is seeking declaratory relief that his right to a § 842-a(7) hearing was violated, Plaintiff fails to allege any facts supporting his conclusory assertion. Section 842-a(7) provides that where a court issues a protective order revoking or suspending a firearm license or ordering the surrender of firearms prior to a hearing, it "shall commence such hearing within fourteen days of the date such order was issued." § 842-a(7). Plaintiff alleges that a modified TOP ordering him to surrender certain firearms was entered against him on September 26, 2018. (Compl. ¶ 34.) According to Plaintiff, Judge Greenwald held a conference on September 28, 2018 to discuss the terms of the TOP, but then adjourned the conference to November 9, 2018, so that he could appoint counsel for the children. (*Id.* ¶ 35.) Thus, on its face, Plaintiff's Complaint fails to allege that he was denied a hearing—the hearing commenced two days after the issuance of the order. When Plaintiff wrote to Judge Egitto on September 29, 2018 to ask for a § 842-a(7) hearing, Judge Egitto responded by pointing to a hearing that was already scheduled for November 9, 2018. (*Id.* ¶¶ 37–38.) Plaintiff does not deny that the November 9, 2018 hearing took place and in fact contests that he was provided certain information in court that day. (*Id.* ¶¶ 51–53.) Section 842-a(7) provides that a hearing must be commenced within fourteen days—it does not bar state judges from adjourning such hearings for legitimate purposes.

opinion of the family court judge, such representation will serve the purposes of this act . . . ." N.Y. Fam. Ct. Act § 249. Issuing and modifying protective orders, and setting hearing schedules are also clearly judicial functions and subject to judicial immunity. *See Hsu v. Braun*, No. 17-CV-1828, 2017 WL 4350595, at *5 (S.D.N.Y. June 7, 2017) (holding that setting the court's schedule and dismissing claims from a complaint "f[e]ll well within the scope of judicial responsibility" and were protected by judicial immunity); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 712–13 (S.D.N.Y. 2011) (holding that state court judge's action of issuing a protective order was "clearly a judicial function" and protected by judicial immunity); *Tota v. Ward*, No. 07-CV-26, 2008 WL 619163, at *3 (W.D.N.Y. Mar. 3, 2008) ("There is no dispute that [the defendant judge] had jurisdiction to issue an Order of Protection. The dispute is whether he did so properly. But whether he did or did not, [the judge] is nonetheless protected from suit by the doctrine of judicial immunity.").

Accordingly, Plaintiff's claims against Judge Greenwald are dismissed. *See Sage-El v. Tully*, No. 15-CV-5606, 2015 WL 6455242, at *2 (E.D.N.Y. Oct. 26, 2015) ("To the extent [the] plaintiff seeks to bring claims against the judges involved in his state court proceedings his claims must be dismissed, as judges have absolute immunity for their judicial acts performed in their judicial capacities.").

### b. Judge Egitto

Plaintiff sues Judge Egitto, "in his official capacity as the Supervising Judge of the Family Courts, in the 9th Judicial District, State of New York," under § 1983 and 22 U.S.C. §§ 2201 and 2202, for failing or refusing to "correct a custom and practice in the Westchester County Family Court of denying litigants their constitutional right[s] to" freedom of religion, parental relations, due process, keep and bear arms, and a hearing pursuant to FCA, § 842-a(7).

(Compl. ¶¶ 76–82.)  Plaintiff alleges Judge Egitto failed or refused to correct a custom and practice of appointing AFCs without jurisdiction, (*id*. ¶ 83), and a custom and practice of "failing to inform parents when AFCs are appointed, the legal authority for the appointment, the factual basis for the appointment, the identity of the AFC and if the AFC is precluded from accepting any appointments," (*id*. ¶ 84).

Plaintiff's claims against Judge Egitto in his official capacity are barred by the Eleventh Amendment because they are essentially claims against the State of New York.  *See Myers v. Cholakis*, No. 08-CV-126, 2008 WL 5147042, at *2 (N.D.N.Y. Dec. 5, 2008) ("Thus, to the extent that [the plaintiff] purports to sue [the state judge] in her official capacity as a New York State Judge, such claims are barred by the Eleventh Amendment."); *Sassower v. Mangano*, 927 F. Supp. 113, 121 (S.D.N.Y. 1996) (holding that claims asserted against the presiding and associate justices of the New York State Appellate Division, Second Department, were barred by the Eleventh Amendment), *aff'd*, 122 F.3d 1057 (2d Cir. 1997).  "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quotation marks omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Id*. (quotation marks omitted).  New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).  Plaintiff's § 1983

claim against Judge Egitto in his official capacity is therefore barred by the Eleventh

Amendment and is dismissed.[5] [6]

---

[5] Even if Plaintiff had sued Judge Egitto in his individual capacity, the suit would have been barred by judicial immunity because all the actions Plaintiff alleges Judge Egitto took are judicial functions well within the scope of judicial responsibility. Plaintiff alleges that Judge Egitto granted a September 26, 2018 ex parte application for the modification of the TOP against Plaintiff although he knew that Eichen and DiMella-Deem made affirmative misrepresentations in that application. (Compl. ¶¶ 34, 48.) Plaintiff also alleges that Judge Egitto ignored his September 29, 2018 letter requesting a § 842-a(7) hearing, (*id.* ¶ 37), and instead responded on October 2, 2018 by referencing a future court date of November 9, 2018 and a trial on the underlying petitions scheduled for January 8 and 9, 2019, (*id.* ¶ 38). As the Court explained with respect to Judge Greenwald, issuing and modifying protective orders, and setting hearing schedules are also clearly judicial functions. *See Hsu*, 2017 WL 4350595, at *5 (holding that setting the court's schedule and dismissing claims from a complaint "fall well within the scope of judicial responsibility"); *Bobrowsky*, 777 F. Supp. 2d at 712–13 (holding that state court judge's action of issuing a protective order was "clearly a judicial function"); *see also Bliven*, 579 F3d at 209 ("[E]ven allegations of bad faith or malice cannot overcome judicial immunity.").

[6] Plaintiff notably does not name the Westchester County Family Court as a defendant in this Action. And indeed, he could not, because the New York State Unified Court System is "unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 368 (citation omitted); *see also O'Dette v. N.Y. State Unified Court Sys.*, No. 12-CV-2680, 2013 WL 1623597, at *4 (E.D.N.Y. Apr. 15, 2013) ("An arm of the State, such as the New York State Unified Court System, is immune [under the Eleventh Amendment]."). Any claims against the Family Court would thus be barred by the Eleventh Amendment.

Nevertheless, Plaintiff requests injunctive relief against the Westchester County Family Court in the form of "an order compelling the Westchester County Family Court to hold post-deprivation hearings within three days of entering 'no contact' TOPs," (Compl. ¶ N), and "an order compelling the Westchester County Family Court to hold post-deprivation hearings within fourteen days of ordering litigants to surrender their firearms," (*id.* ¶ O). Not only do courts generally not order injunctive relief against non-parties, *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988), it is also "well-settled that 'federal courts have no general power to compel action by state officials,'" *Columbia Artists Mgmt., LLC v. Swenson & Burnakus, Inc.*, No. 05-CV-7314, 2008 WL 4387808, at *8 (S.D.N.Y. Sept. 24, 2008) (citation omitted); *see also Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir. 1988) (rejecting application for writ of mandamus compelling state court judge to permit defense counsel's use of race-based peremptory challenges)). Therefore, Plaintiff's request for injunctive relief against non-party Westchester County Family Court is denied.

### 3. Younger Abstention

Even if DiMella-Deem and Eichen were state actors, and Judge Greenwald and Judge Egitto were not protected by judicial immunity, this Court would have to abstain from exercising jurisdiction over this case under *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). Plaintiff seeks declaratory and injunctive relief that would cause this Court to intervene in Plaintiff's ongoing state-court child custody and divorce proceedings.

*Younger* abstention provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The Court is mindful that "abstention is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their jurisdiction," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quotation marks omitted), and that "*Younger* abstention is a 'prudential limitation' grounded in considerations of comity rather than a 'jurisdictional bar' derived from Article III of the Constitution," *Sullivan v. New York State Unified Court Sys.*, No. 15-CV-4023, 2016 WL 3406124, at *6 (S.D.N.Y. June 17, 2016) (quoting *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006)). However, "*Younger* abstention is *required* when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (emphasis added).

All three Younger requirements are clearly met in this case. First, Plaintiff's Complaint and recent correspondence with the Court reflects that state proceedings are ongoing in the divorce and custody dispute underlying this Action. (*See* Compl. ¶¶ 50, 54; Pl.'s Nov. 2018

Letter; Pl.'s Apr. 2019 Letter.)  Plaintiff does not, in fact, allege that his state-court proceedings have concluded.  Second, the underlying divorce and child custody proceeding undoubtedly involves an "important state interest."  *Diamond "D" Const. Corp.*, 282 F.3d at 198.  Indeed, the Supreme Court has long recognized a "domestic relations exception" that "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Reno v. Flores*, 507 U.S. 292, 310 (1993) (noting that states have "special proficiency in the field of domestic relations, including child custody" (quotation marks omitted)); *Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts.").  Third and finally, Plaintiff would have an adequate opportunity for judicial review of the federal constitutional claims in state court.  After the Family Court enters a final order, Plaintiff may appeal that decision within the state court system and raise there all federal constitutional claims.  *See Donkor v. City of New York Human Resources Admin. Special Servs. for Children*, 673 F. Supp. 1221, 1226 (S.D.N.Y. 1987) ("[The Second] Circuit has often recognized the obligation and competence of state courts to decide federal constitutional questions." (citing *Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1142 (2d Cir. 1986) and *Star Distributors, Ltd. v. Marino*, 613 F.2d 4, 8 n.10 (2d Cir. 1980))).  Plaintiff has "not shown any procedural barrier to [his] assertion of constitutional issues in the state court proceeding."  *Id.* (citing *Moore v. Sims*, 442 U.S. 415, 430 (1979)).  "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities, it cannot be said that state court review of constitutional claims is inadequate for *Younger* purposes."  *Hansel v. Town Court for Springfield*, 56 F.3d 391, 394 (2d Cir. 1995).

The Court therefore dismisses Plaintiff's Complaint on *Younger* abstention grounds as well.

### 4. Domestic Relations Abstention Doctrine

The Supreme Court has recognized a domestic relations exception to subject matter jurisdiction that "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 703. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94 (1890). The exception is narrow, but even in cases where the Court may properly exercise original subject matter jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (per curiam); *see also Ranney v. Bauza*, No. 10-CV-7519, 2011 WL 4056896, at *3 (S.D.N.Y. Aug. 31, 2011) (distinguishing the narrow domestic relations exception from the broader "*American Airlines* abstention doctrine" upon which courts in the Second Circuit routinely rely). Applying these principles, courts in the Second Circuit have abstained from controversies that, regardless of how a plaintiff characterizes them, "begin and end in a domestic dispute." *Tail v. Powell*, 241 F. Supp. 3d 372, 377 (E.D.N.Y. 2017) (citation and quotation marks omitted); *see also Martinez v. Queens Cnty. Dist. Atty.*, 596 F. App'x 10, 12 (2d Cir. 2015) (applying domestic relations exception to plaintiff's conspiracy claim against state judges and officials involved in divorce proceeding and reasoning that "subject matter jurisdiction may be lacking in actions directed at challenging the results of domestic relations proceedings," even if parties are not seeking a custody decree); *see also Schottel v. Kutyba*, No. 06–1577, —Fed. App'x— , 2009 WL

230106, at *1 (2d Cir. Feb. 2, 2009) ("Although we recognize that the domestic relations 'exception is very narrow,' a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." (citation omitted)).

Here, the Court must abstain from exercising jurisdiction over Plaintiff's federal claims because Plaintiff presents issues that are, or are on the verge of being, about child custody and divorce. Plaintiff's claims arise from the Defendants' alleged actions in the child custody and divorce proceedings that are pending in a state court. Plaintiff seeks declaratory and injunctive relief, as well as damages, from the Family Court Judges overseeing the divorce and child custody proceedings, his wife, and his wife's attorney representing her in those proceedings. (*See generally* Compl.) That Plaintiff invokes rights guaranteed him by the federal Constitutional and federal law does not change the fact that all the alleged violations occurred during the course of his state divorce and child-custody proceedings. (Compl. ¶¶ 22–53.) Plaintiff does not allege, and there is no indication, that Plaintiff will not be able to vindicate those rights on appeal in the state court system.

Accordingly, the Court dismisses the remainder of Plaintiffs federal claims under the abstention doctrine articulated in *American Airlines*. *See Tait*, 241 F. Supp. 3d at 376 ("[T]he [domestic relations] exception is . . . understood to grant to federal courts the discretion to abstain from exercising jurisdiction over issues on the verge of being matrimonial in nature as long as full and fair adjudication is available in state courts." (quotation omitted)); *McKnight*, 699 F. Supp. 2d at 517 (applying domestic relations abstention doctrine to plaintiff's tort claims arising out of state child-custody proceedings); *Neustein v. Orbach*, 732 F. Supp. 333, 339–40 (E.D.N.Y. 1990) (applying domestic relations abstention doctrine to plaintiff's federal constitutional claims against actors involved in state court child-custody proceedings, and

concluding that jurisdiction was lacking where the "[p]laintiff's sole purpose in bringing this domestic relations dispute to the federal courts [was] a frivolous attempt to engage the [c]ourt in a manner over which it ha[d] no jurisdiction").[7]

---

[7] The Court notes that there is some precedent in the Second Circuit that *Younger* abstention does not apply to claims for money damages. *See Rivers v. McLeod*, 252 F.3d 99, 101–02 (2d Cir. 2001) (stating that the "application of the *Younger* doctrine is inappropriate where the litigant seeks money damages for an alleged violation of § 1983"); *McKnight*, 699 F. Supp. 2d at 520 (applying *Younger* abstention to plaintiff's claims for injunctive relief but not to plaintiff's claims for money damages). However, these cases cite *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000), in which the Second Circuit did not expressly decide whether *Younger* applies to claims for money damages, but instead noted that the Supreme Court has also declined to reach the issue and held that even if *Younger* did apply to claims for money damages, the federal suit should be stayed rather than dismissed. *Id*. at 238. Because the question has not been conclusively decided, some district courts in the Second Circuit have applied the *Younger* abstention doctrine to claims for monetary relief. *See, e.g.*, *Torres v. Gaines*, 130 F. Supp. 3d 630, 637 (D. Conn. 2015) (applying *Younger* abstention doctrine to claim for money damages); *McCulley v. N.Y.S. Dept. of Envtl. Conservation*, 593 F. Supp. 2d 422, 434 (N.D.N.Y. 2006) (same). *Cf. Simpson v. Rowan*, 73 F.3d 134, 138 & n. 6 (7th Cir. 1995) (observing that "a plurality [of Circuits] now applies *Younger* in some fashion to damage claims").

Here Plaintiff seeks primarily declaratory and injunctive relief, (Compl. ¶¶ A–P), but also compensatory damages, and fees, costs, and expenditures, (*id.* ¶¶ Q–R). It is clear that the *Younger* abstention doctrine applies at least to bar Plaintiff's claims for declaratory and injunctive relief. The Court need not decide whether it can dismiss Plaintiff's claims for monetary relief based on *Younger* abstention grounds because it otherwise dismisses those claims on the merits. However, even if the Court did not herein dismiss all claims on the merits, and the *Younger* abstention doctrine did not bar Plaintiff's claims for monetary relief, the domestic relations abstention doctrine clearly does apply to bar even Plaintiff's claims for monetary relief. *See McKnight*, 699 F. Supp. 2d at 517 (applying domestic relations abstention doctrine to claims for monetary relief because the court was "deprived of jurisdiction over claims that 'begin and end in a domestic dispute,' even if the plaintiff [was] seeking only monetary damages" (citation omitted); *see also Schottel*, 2009 WL 230106, at *1 (holding that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages" and applying domestic relations abstention doctrine to claims for monetary relief). Thus, Plaintiff's claims for damages are barred by the domestic relations exception.

## III. Conclusion

For the foregoing reasons, Eichen and DiMella-Deem's Motions are granted. The remainder of Plaintiff's federal claims are barred by judicial and state immunity, and this Action is dismissed in its entirety on abstention grounds. The Court denies Plaintiff's outstanding application as moot. (Dkt. Nos. 15, 18.) Although courts generally grant a pro se plaintiff an opportunity to amend a complaint to cure its defects, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Plaintiff is an attorney whose prior cases involving the same Family Court proceedings were dismissed on similar grounds. Because the defects in Plaintiff's Complaint cannot be cured, Plaintiff's Complaint is dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 9, 13), enter judgment for all Defendants, close this case, and mail a copy of this Opinion and Order to Plaintiff.[8]

SO ORDERED.

Dated: May ___, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[8] A district court may impose a leave-to-file sanction on a plaintiff if the court (1) notifies the litigant that future frivolous or duplicative filings could result in sanctions; (2) if the litigant continues such behavior, orders the litigant to show cause as to why a leave-to-file sanction order should not be issued; and (3) if the litigant's response does not explain why sanctions are inappropriate. *Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 (2d Cir. 2005); *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998). Plaintiff was expressly warned by Judge Seibel that future frivolous actions could result in the imposition of a leave-to-file sanction, the Court will also separately issue an Order directing Plaintiff to show cause why the Court should not enjoin him from making any additional filings in this Court regarding the actions of his wife, attorneys, judges, and other officials involved in the state divorce and custody proceedings.